IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MARIANA E. LARA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:03-CV-0320 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION
### TO REVERSE THE DECISION OF THE COMMISSIONER
### AND REMAND FOR FURTHER ADMINISTRATIVE ACTION

Plaintiff MARIANA E. LARA brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE B. BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's applications for disability benefits and supplemental security income benefits. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case REMANDED for proceedings consistent with this opinion.

I.
PROCEEDINGS

On November 29, 2001, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging she became unable to work because of a disabling condition

on November 17, 2001.[1]  (Tr. 84-86, 493-96).  As illnesses, injuries or conditions limiting her ability to work, plaintiff alleged depression, heart problems, shortness of breath "when chest starts hurting" and bad headaches.[2]  (Tr. 93).  Plaintiff alleged her conditions first bothered her in 1998[3] and limit her ability to work in that when she moves too much, she becomes short of breath, her chest hurts, she gets dizzy and she has bad headaches.  Plaintiff acknowledged she was able to continue working after her conditions first bothered her, but noted she began working fewer hours due to missing work as a result of her condition.  Plaintiff explained she completely stopped working on November 17, 2001, when she was admitted to the hospital with chest pains and bad headaches.  Plaintiff states she completed the 6th grade in Honduras, and identified her past work as meat trimming (1990-1995) and motel housekeeping (1996-2001).  (Tr. 94; 102).  At the time she filed her application, plaintiff was 42-years-old.  (Tr. 84).

On May 22, 2002, the SSA, identifying plaintiff's primary diagnosis as "possible dysthymia"[4] and secondary diagnosis as "probable personality disorder," denied plaintiff benefits determining plaintiff's condition was not severe enough to keep her from working.[5]  (Tr. 62; 64-70).  Plaintiff, represented by an appointed non-attorney representative, requested the SSA reconsider its

---

[1] A non-attorney representative was appointed to represent plaintiff that same date.  (Tr. 25).

[2] In her brief, plaintiff alleges disability imposed by 1) severe depression, and 2) recurrent migraine headaches.

[3] Records indicate prior applications for SSI and DIB were denied on January 29, 1998.  (Tr. 110).

[4] "A mood disorder characterized by chronic mildly depressed or irritable mood often accompanied by other symptoms (as eating and sleeping disturbances, fatigue, and poor self-esteem."  *MedlinePlus Online.*

[5] In denying disability benefits, the SSA explained, "You said you were disabled because of mental, headaches and chest pain problems.  However, your current symptoms are not severe enough to be considered disabling under Social Security guidelines.  Although you are occasionally depressed, there are no signs of a severe mental illness.  This has not seriously affected your ability to understand, remember or be around other people.  Most of the time you are able to think clearly and carry out normal activities.  The evidence does not reveal related or other problems which would be disabling.  Although you said you have disabling symptoms, the evidence does not show that your ability to perform basic work activities is as limited as you indicated.  Your overall medical condition does not limit your ability to work.  (Tr. 70).

initial determination, explaining she did not agree with the determination because she "cannot work due to multiple impairments." (Tr. 71). On September 11, 2002, the SSA, identifying plaintiff's primary diagnosis as "personality disorders/conduct disorders" and her secondary diagnosis as "possible dysthymia," denied plaintiff benefits upon reconsideration.[6] (Tr. 63, 73-76).

On September 23, 2002, plaintiff, through her representative, requested a hearing before an Administrative Law Judge ("ALJ"), explaining she disagreed with the determination on reconsideration because she "cannot do work due to multiple physical impairments." (Tr. 77). On February 26, 2003, the ALJ conducted an administrative hearing. (Tr. 27-61). On April 22, 2003, the ALJ rendered an unfavorable decision, finding plaintiff not disabled at any time through the date of the decision. (Tr. 14-21).

The ALJ determined plaintiff, at the time of the hearing, was 43-years-old, had a 6th grade education, had the ability to speak English but not read or write in English, and had past work experience as a laborer in a meat packing plant and as a housekeeper. (Tr. 15). The ALJ noted plaintiff alleged she became disabled and unable to work on November 17, 2001 due to depression, atypical chest pain, epigastric pain, and headaches. The ALJ found the medical evidence indicated plaintiff had impairments of (1) depression, (2) atypical chest pain, (3) epigastric pain, and (4) headaches. (Tr. 16). The ALJ found these impairments were severe within the meaning of the Regulations, but that such impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

---

[6]In denying disability benefits, the SSA explained, "You said you were disabled because of headaches, voices and depression. However, your current symptoms are not severe enough to be considered disabling under Social Security guidelines. Although you said you have these conditions, the evidence does not show that your ability to perform basic work activities is as limited as you indicated. Your overall medical condition does not limit your ability to work." (Tr. 76).

After discounting plaintiff's complaints of disabling pain and functional restrictions,[7] the ALJ determined plaintiff retained the residual functional capacity (RFC) "to perform light work, that is simple and repetitive, which requires only one or two step tasks and does not require extensive interaction with members of the general public." (Tr. 17, 20). In support of his RFC determination, the ALJ cited the State Agency medical consultant's opinion, a completed Psychiatric Review Technique form, and the opinion of plaintiff's treating physician wherein plaintiff was found to have only slight limitations in her overall functioning. The ALJ noted plaintiff's past relevant work (PRW) as a housekeeper was unskilled, light work, and as a laborer in a meat packing plant was unskilled, medium work. The ALJ determined that, "based on the testimony of the vocational expert" (VE), plaintiff was no longer capable of performing her past relevant work. (Tr. 18, 20). The ALJ noted plaintiff was 43 years old, defined as a younger individual, had a marginal education, and no transferable skills. (Tr. 18-19, 20). The ALJ concluded, based upon plaintiff's RFC, that she was capable of performing a limited range of light work, noting plaintiff's ability to perform all of the requirements of light work was impeded by her additional exertional and/or non-exertional limitations. The ALJ noted that the VE, presented with a hypothetical of an individual with plaintiff's specific work restrictions, age, education, past relevant work experience, and RFC, opined plaintiff to be capable of performing other work such as work as a silver wrapper (light, unskilled), laundry folder (light, unskilled), and small product assembler (light, unskilled). After hearing the testimony of the VE, the ALJ concluded plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national

---

[7]The ALJ found plaintiff's "testimony and reports of pain and functional restrictions were not supported by the evidence to the disabling degree alleged and, therefore, lacked credibility." (Tr. 17). The ALJ then cited numerous medical records which he found were contradictory to plaintiff's alleged degree of disability. In his "Findings," the ALJ noted plaintiff's "allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." (Tr. 20).

economy. In his "Findings," the ALJ cited "Medical-Vocational Rule 202.17 as a framework for decision-making," noting there were a significant number of jobs in the national economy plaintiff could perform such as a Silver Wrapper, Laundry Folder and Small Product Assembly. (Tr. 20). The ALJ thus concluded plaintiff was not under a disability as defined in the Social Security Act at any time through the date of his decision.

Upon the Appeals Council's denial of plaintiff's request for review on August 1, 2003, the ALJ's determination that plaintiff was not under a disability became the final decision of the Commissioner. (Tr. 6-8). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court

determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

### III.
### ISSUE

Plaintiff's brief in support of her complaint presents the following issue for review:

> Whether there is substantial evidence to support the ALJ's finding that there are a significant number of jobs in the national economy that plaintiff can perform with her stated RFC.

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and whether proper legal standards were applied in reaching this decision.

### IV.
### MERITS

#### A.
#### Specific Vocational Preparation (SVP) Level

At the administrative hearing, the VE, who heard the testimony and reviewed plaintiff's

vocational material, identified plaintiff's past relevant work as a housekeeper/cleaning as light, unskilled work with an SVP Level 2, and work as a meatpacking laborer as medium, unskilled work with an SVP Level 2 (but also noting such work was often performed at the heavy exertional level). (Tr. 56).  The ALJ then presented the VE with the following hypothetical individual:

> [W]ith the age, education, background, and experience of the Claimant . . . limited to a wide-range of [light] work, the individual can sit in intervals of an hour to two hours at a time but occasionally needs to alternate sit and stand, that is no continuous sitting or no continuous standing . . . can communicate in English but does [not] read or write in English, and she's limited to simple one- or two-step work that is non-public.

(Tr. 56-57).  The VE opined that such an individual could not perform any of plaintiff's past relevant work, but when queried as to whether there were "[a]ny jobs in the economy the person with those limitations might do," the VE, noting "language is an issue," testified such a person could perform work as a Silver Wrapper, light, unskilled, SVP 1; Laundry Folder, light, unskilled, SVP 2; and Small Product Assembler, light, unskilled, SVP 2.  When plaintiff's representative added to the hypothetical a requirement that such an individual be allowed to take more than normal breaks resulting in a 3-4 hour a day absence from the assigned work station, the VE replied that such a condition would be unreasonable and that an employer would not tolerate such an accommodation.  When plaintiff's representative queried the VE as to the effect of the hypothetical individual missing days from work, the VE responded that "[u]nscheduled absences, anything more than once in a 30-day period at the unskilled level would not be accommodated by an employer."

      The ALJ ultimately found plaintiff retained the RFC to "perform light work, that is simple and repetitive, requires only one or two step tasks and does not require extensive interaction with members of the general public."  Based on the VE's testimony and the framework of Rule 202.17, the ALJ concluded plaintiff retained the capacity to perform work that exists in significant numbers in the national economy.

Plaintiff argues the ALJ erred and did not meet his Step Five burden of showing there is other work plaintiff can perform because the VE's testimony was "impermissibly in direct conflict with the definitions and descriptions in the DOT." Plaintiff contends the VE testimony was erroneous with regard to the jobs of Laundry Folder and Small Product Assembler because the Specific Vocational Preparation (SVP)[8] requirement of those jobs, as set forth in the DOT, is inconsistent with plaintiff's RFC.[9] Under the DOT, the jobs of Laundry Folder and Small Products Assembler are SVP 2 jobs which require a typical worker an amount of time "beyond short demonstration up to and including 1 month" to learn. Plaintiff argues, "One does not have to be a vocational expert to recognize that the average worker could learn to do one or two step work with only a short demonstration" and "would probably not need up to a month to learn how to do a one or two step job." Plaintiff argues that since the ALJ found plaintiff limited to "simple" and repetitive work that requires only "one or two step tasks," the VE's testimony that she is able to perform the work of Laundry Folder and Small Product Assembler, which require some length of time "beyond short demonstration" to learn, is in direct conflict with the DOT.

Plaintiff's argument is that any job limited to "simple one- or two- step instructions" (R1 jobs) are only consistent with jobs requiring a "short demonstration" to learn (SVP1 jobs). Review of the DOT, however, reveals numerous R1/ SVP2 jobs (jobs requiring more than a short demonstration, up to and including 1 month, to learn). *See, e.g.*, *DOT 753.687-014, Debrander*, R1,

---

[8]The "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."

[9]Plaintiff does not contend she is not qualified to perform the SVP of the Silver Wrapper job, acknowledging such job is an SVP 1 job, the lowest SVP level of work, which requires a "short demonstration only" in order for the typical worker to learn the skills needed for average performance of the job.

SVP: 2). Here, the VE identified two (2) light, unskilled jobs plaintiff could perform which might take the typical worker some undetermined amount of time beyond a short demonstration, a term undefined by the DOT, to learn. This length of time to learn a job is not, by definition, inconsistent with an RFC limitation to simple one- or two-step work. Unskilled work corresponds to an SVP of 1-2. SSR 00-4p. It is the opinion of the undersigned that the VE's testimony that plaintiff could perform the SVP2 jobs identified by the VE is not in direct conflict with the DOT so as to constitute error.

B.
General Education Development – Reasoning Development Level

In addition to the SVP contention discussed above, plaintiff further argues the VE's testimony she could perform the work of Silver Wrapper, Laundry Folder and Small Product Assembler was in direct conflict with the DOT because those jobs, per the DOT, require a level of Reasoning Development (R) on the General Education Development (GED)[10] scale that is inconsistent with, or exceeds, plaintiff's RFC. All of the jobs cited by the VE indicate an R2 reasoning development level is necessary for a worker to satisfactorily perform the job. R2 indicates the worker's ability to "[a]pply commonsense understanding to carry out *detailed but uninvolved written or oral instructions*. Deal with problems involving a few concrete variables in or from standardized situations." R1, on the other hand, indicates a worker should be able to "[a]pply commonsense understanding to carry out *simple one- or two-step instructions*. Deal with standardized situations with occasional or no variables in or from these situations encountered on

---

[10]The GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." This is education of a general nature which does not have a recognized, fairly specific occupational objective. The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development.

the job." Plaintiff contends the VE's testimony is in direct conflict with the DOT and cannot support the ALJ's finding that plaintiff can perform other work in the national economy that exists in significant numbers.

The Commissioner contends plaintiff's argument that she is unable to perform the jobs identified because they require a reasoning level higher than what she possesses is irrelevant. The Commissioner first notes the "*DOT lists maximum requirements of occupations as generally performed*, not the range of requirements of a particular job as it is performed in specific settings." *Quoting* SSR 00-4p at *3 (emphasis added). The Commissioner then notes a VE "may be able to provide more specific information about jobs or occupations than the DOT." *Id.* The Commissioner also notes the DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities, *DOT*, Vol. 1, p. xiii, and argues that not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT. (*citing Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1996)). The Commissioner also notes the Fifth Circuit's clarification that while the DOT "simply gives a *general description* of the [job] duties involved," a VE "is familiar with the specific requirements of a particular occupation, including working conditions and the *attributes and skills* needed," and is "able to compare all the unique requirements of a specified job with the particular ailments a [plaintiff] suffers in order to reach a reasoned conclusion whether the [plaintiff] can perform the specific job." (*quoting Fields v. Bowen,* 805 F.2d 1168, 1170-71 (5th Cir. 1986)).

In considering whether there is a conflict between the DOT and the VE testimony, the Court must look to Social Security Ruling (SSR) 00-4p. SSR 00-4p requires an ALJ to identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by a vocational expert and information in the DOT. The ruling further requires the ALJ to explain, in the

administrative decision, how any identified conflict was resolved.

The policy interpretation applicable to SSR 00-4p is clear that the ALJ, as part of his duty to fully develop the record, must inquire on the record whether or not there is consistency between the occupational evidence provided by the VE with the occupational evidence provided by the DOT. Here, the ALJ did not make any on the record inquiry of the VE as to whether the testimony presented by the VE was consistent with the DOT.  By failing to make such an inquiry, the ALJ violated SSR 00-4p.  Social Security rulings, which the administration issues to clarify regulations and policy, are binding upon all components of the Social Security Administration.  *Sullivan v. Zebley*, 493 U.S. 521, 530, n. 9, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).  The failure to follow this ruling, however, does not necessarily compel a reversal.  The failure to follow the rulings is not, per se, reversible error.

Plaintiff in this case does not argue the ALJ's determination of not disabled should be reversed simply because the ALJ failed to follow SSR 00-4p.  Instead, plaintiff argues reversal is appropriate because the VE's testimony, that a hypothetical individual with the limited ability to perform jobs requiring one or two steps can perform the jobs identified by the VE, is in direct conflict with the DOT's Reasoning Development level for those jobs.  Specifically, plaintiff argues those identified jobs require an ability beyond that of simple repetitive light work requiring one or two step tasks.  After consideration of plaintiff's argument, and for the reasons set forth herein, it is the opinion of the undersigned that the failure of the ALJ to follow SSR 00-4p was reversible error.[11]

Defendant does not argue no conflict exists between the Reasoning Development levels in the DOT for the jobs identified by the vocational expert.  Instead, defendant's argument focuses

---

[11]Certainly there could be situations where the failure to follow the ruling could be harmless.  For instance, where no inquiry was made of the VE as to whether any conflicts existed but where the testimony of the VE and the DOT was identical.

primarily upon a contention that no conflict exists between the VE testimony and the DOT because the only criteria which need to be considered are the exertional level, the skill level, and the transferability of work skills.  As plaintiff points out, defendant failed to cite any case law for this contention and a number of courts have addressed the issue of conflicts in Reasoning Development levels in the DOT versus the testimony of a VE.

Defendant also argues the DOT merely describes the maximum job requirements for each occupation, and that the VE is more familiar with the specific requirements of a particular occupation.  This argument, however, implies that VE testimony would trump the DOT, an argument SSR 00-4p specifically rejects.

Lastly, defendant, citing *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000), argues plaintiff's non-attorney representatives' failure to raise the issue of a conflict between the VE testimony and the DOT is significant.  While defendant does not directly argue waiver, that is the implication.  As plaintiff has pointed out, *Carey v. Apfel* was decided prior to the effective date of SSR 00-4p.  Additionally, while the Court agrees it would not necessarily be proper to allow a plaintiff to scour the record for conflicts and/or potential conflicts and only raise them on appeal, it is noted that had the ALJ adhered to SSR 00-4p, and made an on-the-record inquiry during the administrative hearing as to whether there was any inconsistency in the VE's testimony and the DOT, the issue would have been framed and plaintiff's representative, even though not an attorney, would have been on notice.

The conflict identified by plaintiff was substantial enough to warrant inquiry and development at the administrative hearing as to whether an individual limited to simple repetitive tasks requiring no more than one or two steps is able to perform the jobs identified by the VE, and which the DOT classifies as requiring the ability to perform detailed written or oral instructions.

This conflict is further highlighted by the fact that the criteria of Reasoning Development level 1 is much closer to the RFC found by the ALJ than the language of Reasoning Development level 2.

The failure of the ALJ to make an inquiry and develop this issue, pursuant to SSR 00-4p, requires this case be reversed and remanded for further development with respect to whether any conflicts exist between the VE testimony and the DOT and, if so, whether the jobs identified by the VE require the ability to perform detailed tasks and whether plaintiff's RFC includes that ability. It is the opinion and finding of the Magistrate Judge that the defendant's determination of not disabled be REVERSED and the case REMANDED.

Consequently, the VE testimony certainly appears to be in direct conflict with DOT descriptions. If the conflict cannot be resolved, then the VE testimony does not constitute substantial evidence sufficient to carry the Commissioner's burden to show, at Step 5 of the sequential evaluation process, that the plaintiff can perform available work. *Augustin v. Barnhart*, 2002 WL 31098512 (E.D. Tex. August 27, 2002). Here, the VE testified a person limited to simple one- or two- step work could perform jobs described in the DOT as requiring a person to perform detailed but uninvolved written or oral instructions. Such testimony, in apparent conflict with the DOT, does not constitute substantial evidence sufficient to prove plaintiff can perform other work in the economy which exists in significant numbers. The decision of the Commissioner should be reversed, and the case remanded. On remand, the apparent conflict should be directly addressed on the record.

Additionally, in determining plaintiff's RFC, the ALJ found plaintiff capable of speaking English, but not capable of reading or writing English. Plaintiff has not challenged this finding although plaintiff, at the ALJ hearing, utilized an interpreter.[12] The VE testified, in response to the

---

[12] The question posed to plaintiff prior to the hearing was "I understand that you speak and understand <u>some</u> English, correct?" (Tr. 29).

ALJ's hypothetical, that "[T]he language is an issue . . .," and then identified the three jobs previously identified. The VE's statement about language being an issue and how plaintiff's language deficiencies would affect her ability to perform the jobs in question should be addressed on remand.

## V.
## RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner be REVERSED and REMANDED for further administrative proceedings as set forth herein.

## VI.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record by certified mail, return receipt requested, and to the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this <u>21st</u> day of July 2006.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this

recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), <u>and</u> the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).